# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF OKLAHOMA

|  |  |  |  |
|---|---|---|---|
| (1) | TERRY BAYLES; | ) | |
| (2) | KERRY WELBORN; | ) | |
| (3) | AUSTIN CLAYLON; | ) | |
| (4) | CALEB BACON; | ) | |
| (5) | TONY BLAKE; | ) | |
| (6) | MISTY CAMPBELL; | ) | |
| (7) | BILLY CHASE; | ) | |
| (8) | JEREMIAH COLBERT; | ) | |
| (9) | GEORGE DAVENPORT; | ) | |
| (10) | CHRISTOPHER GRAY; | ) | |
| (11) | JAMES HENSON; | ) | |
| (12) | PEYTON JONES; | ) | |
| (13) | JAMES GEOFFREY; | ) | |
| (14) | SAWYER LOPEZ; | ) | |
| (15) | ADELBY MARTINEZ; and | ) | |
| (16) | JAMES MCKIBBEN, | ) | |
|  |  | ) | |
|  | Petitioners, | ) | |
|  |  | ) | |
| v. |  | ) | 25-CV-370-JAR |
|  |  | ) | |
| (1) | THE CHOCTAW NATION | ) | |
|  | OF OKLAHOMA; and | ) | |
| (2) | CHOCTAW COUNTY SHERIFF, | ) | |
|  | TERRY PARK, EX. REL. COUNTY JAIL, | ) | |
|  |  | ) | |
|  | Respondents. | ) | |

FILED

JUL 3 0 2026

BONNIE HACKLER
Clerk, U.S. District Court

By _____
Deputy Clerk

## OPINION & ORDER

Courts are often asked to decide who is right. This case requires the Court to answer a different question: Who decides first?

Two motions are before the Court: (1) the Choctaw Nation's Motion to Dismiss [Docket No. 32]; and (2) Petitioners' Motion for Leave to Amend [Docket No. 31].

1

Petitioners are defendants in the Choctaw Nation's criminal justice system. They allege serious failures within that system: inadequate representation, excessive bail, prolonged detention, interference with attorney-client communications, retaliation, and corruption. But they came to federal court before presenting, through the Nation's appellate or extraordinary writ procedures, their challenges to detention by order of the Nation and their requests for federal supervision of the Nation's criminal justice institutions.

And they ask for far more than review of an allegedly unlawful detention. Petitioners ask this Court to supervise the operation of the Nation's public defender office, dictate staffing and caseload limits, direct funding priorities, remove supervisory personnel, mandate institutional reforms, approve future policies, and retain continuing oversight for no less than eighteen months.

That request misunderstands both the nature of habeas corpus and the limits of federal judicial power.

Congress created a narrow federal remedy through 25 U.S.C. § 1303: a person detained by order of an Indian tribe may ask a federal court to test the legality of that detention. Congress did not create a general federal cause of action to enforce the Indian Civil Rights Act. Nor did it authorize federal courts to manage tribal budgets, direct tribal personnel decisions, or supervise the continuing operation of tribal institutions.

2

Although Petitioners invoke habeas corpus and ask the Court to issue an order to show cause, the relief they identify is overwhelmingly institutional rather than custodial. The First Amended Petition does not explain, Petitioner by Petitioner, which detention order is unlawful, why it is unlawful, or what custody altering relief should be entered. Instead, it principally asks this Court to restructure and supervise the institutions of a separate sovereign.

That request asks habeas corpus to perform a function Congress did not give it.

The question before the Court is not whether Petitioners' allegations are serious. They are. Nor does the Court decide today whether those allegations are true. The question is whether Congress authorized this Court to provide the relief Petitioners seek against the Nation and the proposed tribal officials, and whether a federal court may intervene in the Nation's criminal justice system before the Nation's own courts have been afforded the opportunity to address the alleged wrongs.

The answer is no.

Tribal exhaustion doctrine exists to preserve tribal sovereignty and to prevent federal courts from overriding tribal legal systems before those systems have had the opportunity to act. *Chegup v. Ute Indian Tribe of the Uintah & Ouray Rsrv.*, 28 F.4th 1051, 1070 (10th Cir. 2022). When a litigant asks a federal court to stand in direct

3

supervision of tribal sovereign action, the principles of comity and sovereignty are "at their zenith." *Id.* at 1062.

Petitioners' allegations do not erase sovereign immunity. They do not excuse exhaustion merely because exhaustion may be difficult, time-consuming, or unsuccessful. And they do not transform a request for structural reform into a cognizable habeas remedy.

The Choctaw Nation is a separate sovereign. Its courts must be afforded the first opportunity to address alleged wrongs arising from proceedings conducted under its authority. That opportunity has not been afforded here.

The Court addresses the grounds necessary to resolve the motions.

## I.  BACKGROUND

The First Amended Petition identifies fourteen Petitioners as defendants facing criminal charges in the Nation's courts. [Docket No. 15 ¶ 3]. It alleges generally that the individual Petitioners were housed in county jails within the Nation's territorial boundaries and more specifically that the fourteen Petitioners named in the First Amended Petition were housed in the Choctaw County Jail on the Nation's behalf. [Id. ¶¶ 1, 3]. Original Petitioners Caleb Bacon and Sawyer Lopez requested dismissal of their claims. [Id. ¶ 3].

Petitioners filed this action under the Indian Civil Rights Act ("ICRA"), 25 U.S.C. §§ 1301–1304, invoking the federal habeas remedy provided by § 1303. [Id. ¶

4

2]. Their First Amended Petition names the Choctaw Nation and Choctaw County Sheriff Terry Park as Respondents. [Id. at 1].

The First Amended Petition alleges systemic deficiencies in the structure and operation of the Choctaw Nation Public Defender's Office. Among other things, Petitioners allege that the office lacks institutional independence, remains subject to improper tribal supervision, is inadequately staffed and funded, and has been prevented from providing constitutionally sufficient representation. [Id. ¶¶ 9–14]. They further allege excessive bail, prolonged detention, interference with attorney-client communications, retaliation, mail tampering, denial of counsel, denial of medical care, and coordinated misconduct between Choctaw Nation officials and county jail personnel. [Id. ¶¶ 8, 15–19, 23–29, 33–37].

Petitioners request several forms of relief. They ask the Court to issue an order to show cause why a writ of habeas corpus should not be granted. They also seek orders barring the Choctaw Nation Public Defender's Office from representing current tribal defendants, requiring the Nation to provide independent counsel, removing identified public defender supervisors, restructuring the public defender office, imposing staffing and caseload requirements, directing funding and compensation decisions, regulating attorney access to detained defendants, requiring institutional remediation plans, and retaining continuing federal oversight. [Id. at 22-25]. Petitioners additionally request damages exceeding $75,000, attorney fees, costs, and class-wide relief. [Id. at 24].

The First Amended Petition identifies no appellate, post-conviction, habeas, or extraordinary writ proceeding that any Petitioner pursued in the Choctaw Nation's courts before filing this action. Instead, Petitioners allege that exhaustion should be excused because available tribal remedies would be ineffective, futile, or meaningless. [Id. ¶ 7].

The Choctaw Nation moved to dismiss. [Docket No. 32]. The Nation argues that Petitioners failed to exhaust available tribal remedies; that sovereign immunity bars the claims asserted directly against the Nation; that the Nation is not a proper habeas respondent; and that the First Amended Petition neither alleges individualized, release-warranting custody defects nor seeks relief confined to the limited habeas remedy authorized by § 1303.

Petitioners oppose dismissal. [Docket No. 42]. They contend that alleged corruption, institutional bias, and systemic deficiencies render tribal remedies inadequate and excuse exhaustion. They further contend that the Nation retains legal control over their detention even when physical custody is delegated to county jails. Finally, Petitioners argue that § 1303 permits habeas review notwithstanding tribal sovereign immunity and that tribal officials may be sued for prospective relief based on allegedly unlawful or ultra vires conduct.

Petitioners also moved for leave to file a Second Amended Petition. [Docket No. 31]. The proposed pleading attached to the motion would add Choctaw Nation Chief Gary Batton, Chief Judge Amy Pierce, and Corrections Manager Robert Apala as

Respondents. [Docket No. 31-1 at 1–2]. Petitioners argue that the proposed Respondents are necessary parties and that amendment would promote judicial economy without causing prejudice or delay.

The Choctaw Nation opposes amendment as futile. [Docket No. 37]. The Nation argues that several Petitioners no longer satisfy the custody requirement and that adding tribal officials cannot restore a nonexistent custody-based controversy. It further argues that the proposed pleading does not cure the sovereign immunity, remedial, exhaustion, proper respondent, and individualized pleading deficiencies raised in the Nation's motion to dismiss.

Petitioners reply that the Nation retains legal control over their detention, that the proposed tribal officials are proper Respondents for prospective relief based on allegedly ultra vires conduct, and that exhaustion should be excused because of alleged corruption and systemic deficiencies. [Docket No. 46]. They further contend that amendment was timely and would cause no prejudice. Petitioners' reply also tenders a revised proposed pleading that would additionally name Choctaw Nation Public Defender Director Blayne Allsup and Assistant Director Tim Beebe as Respondents. [Docket No. 46-1 at 1–2].

The Nation's motion to dismiss and Petitioners' motion for leave to amend are fully briefed. The Court heard oral argument on February 26, 2026.

## II.    STANDARD OF REVIEW

The Choctaw Nation moves to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

A motion under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. The party invoking federal jurisdiction bears the burden of establishing it. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). Tribal sovereign immunity presents a jurisdictional question properly resolved under Rule 12(b)(1). *Miner Elec., Inc. v. Muscogee (Creek) Nation*, 505 F.3d 1007, 1009 (10th Cir. 2007).

When a Rule 12(b)(1) motion presents a facial challenge to jurisdiction, the Court accepts the well-pleaded factual allegations of the petition as true. But the Court does not accept legal conclusions merely because they are pleaded as facts. The party asserting jurisdiction must identify facts and law sufficient to establish that the Court may hear the claim against the particular respondent.

A motion under Rule 12(b)(6) tests whether the pleading states a claim upon which relief may be granted. To survive dismissal, the pleading must contain sufficient factual matter, accepted as true, to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court accepts well-pleaded factual allegations as true and draws reasonable inferences in Petitioners' favor. It need not accept unsupported

conclusions or legal conclusions framed as factual allegations. *Iqbal*, 556 U.S. at 678; *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

Tribal exhaustion is different. It is a prudential rule grounded in comity, not a jurisdictional prerequisite. *Valenzuela v. Silversmith*, 699 F.3d 1199, 1206 (10th Cir. 2012). Federal courts ordinarily must abstain from considering a challenge to the authority of a tribal court until available tribal remedies, including tribal appellate review, have been exhausted. *Id.* Whether an exception excuses exhaustion is determined from the allegations and the available tribal procedures.

Petitioners also seek leave to amend under Rule 15(a)(2). Although leave should be freely given when justice requires, a court may deny amendment when the proposed pleading would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962). An amendment is futile when the amended pleading would be subject to dismissal. *Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007).

### III.    ANALYSIS

#### A.    Petitioners Have Not Exhausted Available Tribal Remedies

The Court begins with exhaustion.

In *Chegup v. Ute Indian Tribe of the Uintah & Ouray Reservation.*, the district court decided whether temporary banishment constituted "detention" under § 1303 without first resolving tribal exhaustion. 28 F.4th 1051, 1059–60 (10th Cir. 2022). The Tenth Circuit reversed. It explained that exhaustion should come first when the

alternative would require deciding a difficult question about the scope of ICRA habeas, exhaustion presents an obvious and compelling obstacle, and federal review would place the court in direct supervision of tribal sovereign action. _Id._ at 1061–62. Under those circumstances, the concerns of comity and tribal sovereignty are "at their zenith." _Id._ at 1062.

Those considerations apply here. Petitioners ask this Court to examine alleged failures within the Choctaw Nation's criminal proceedings, supervise the Nation's public defender system, remove tribal personnel, direct staffing and funding, mandate institutional reform, approve remediation plans, and retain continuing oversight. Before a federal court considers the permissible reach of § 1303 into those sovereign functions, the Choctaw Nation's courts must be afforded the first opportunity to address the alleged wrongs.

The Court therefore resolves exhaustion before considering the scope of the habeas remedy Petitioners invoke.

In _Valenzuela v. Silversmith_, the Tenth Circuit held that § 1303 petitions are subject to tribal exhaustion even though the statute contains no express exhaustion requirement. 699 F.3d 1199, 1206 (10th Cir. 2012). The rule is prudential, not jurisdictional, and rests on respect for tribal sovereignty, the orderly administration of justice, and the need to afford tribal courts the first opportunity to address alleged errors arising from tribal proceedings. _Id._; see also _Iowa Mut. Ins. Co. v. LaPlante_,

10

480 U.S. 9, 16–17 (1987); *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 856–57 (1985).

Exhaustion requires more than presenting an issue to a tribal trial court. Available tribal appellate and extraordinary writ remedies must also be pursued. *Valenzuela*, 699 F.3d at 1207–08. And a tribal remedy need not be mandatory to require exhaustion. If the remedy is available, a petitioner ordinarily must use it before asking a federal court to intervene. *Id.* at 1208.

Petitioners did not.

The Choctaw Nation identifies several available procedures: direct appellate review, post-conviction review when a direct appeal was not timely perfected through no fault of the defendant, and extraordinary writ procedures—including tribal habeas relief—before the Nation's Court of Appeals and Constitutional Court. [Docket No. 32 at 7–9]. Petitioners do not allege that they pursued any of those remedies. They do not allege that either appellate court refused a filing, declined to exercise its authority, or prevented them from presenting the claims asserted here.

Instead, Petitioners contend that exhaustion should be excused.

The exceptions to tribal exhaustion are narrow. Exhaustion is not required when: (1) the assertion of tribal jurisdiction is motivated by harassment or conducted in bad faith; (2) the challenged action is patently violative of an express jurisdictional prohibition; or (3) exhaustion would be futile because no adequate opportunity exists

to challenge the tribal court's jurisdiction. *Burrell v. Armijo*, 456 F.3d 1159, 1168 (10th Cir. 2006); *Valenzuela*, 699 F.3d at 1207. Petitioners invoke all three. None applies.

First, Petitioners do not allege that the Choctaw Nation asserted criminal jurisdiction over them for the purpose of harassment or in bad faith. They allege serious misconduct in the administration of their criminal proceedings, but that is a different question. The Nation is prosecuting alleged violations of tribal law within its own court system. Disagreement with how that jurisdiction has been exercised does not establish that the assertion of jurisdiction itself was undertaken to harass.

Second, Petitioners identify no express jurisdictional prohibition that the Nation's prosecutions patently violate. They do not contend that the Choctaw Nation lacks criminal jurisdiction over them. Their claims concern the manner in which the proceedings have been conducted—not the Nation's authority to conduct them.

Third, Petitioners have not shown that exhaustion would be futile. They allege corruption, institutional bias, inadequate funding, excessive caseloads, retaliation against defense counsel, interference with attorney-client communications, excessive bail, and prolonged detention. The Court accepts those allegations as true at this stage. But accepting an allegation as true is not the same as accepting the legal conclusion drawn from it.

The First Amended Petition does not allege facts showing that the Nation's Court of Appeals or Constitutional Court refused to consider a custody challenge,

denied Petitioners access to extraordinary writ procedures, or lacked the authority or ability to grant meaningful relief. Petitioners have not attempted to use those procedures. Their prediction that the effort would fail does not establish that no adequate opportunity exists.

Futility requires more than doubt. It requires the absence of a meaningful tribal remedy.

Petitioners' authorities do not establish otherwise. In *Wounded Knee v. Andera*, the petitioner timely filed a request for tribal appellate review, but the tribal judge knew of no appellate court, the tribal code did not direct the petitioner to the chairperson who could convene one, and six months passed without any realistic prospect of review. 416 F. Supp. 1236, 1240 (D.S.D. 1976). Petitioners here have not attempted to invoke the appellate and extraordinary writ procedures the Nation has identified.

Nor does *Burrell* support excusing exhaustion here. There, the parties agreed that tribal remedies had been exhausted because no appellate review was available, and the Tenth Circuit later confronted four years of inaction and serious procedural failures after two evidentiary hearings. 456 F.3d at 1165, 1173. Here, Petitioners ask the Court to presume that tribal appellate review will be inadequate before seeking it.

A remedy does not become futile merely because the allegations are serious, the process may take time, or the result is uncertain. Nor does exhaustion become

optional whenever a litigant alleges that the system requiring exhaustion is itself flawed. If accusation alone were enough, the exception would swallow the rule.

Petitioners' request for discovery does not alter that conclusion. They identify no pleaded facts concerning the unavailability or inadequacy of the Nation's appellate or extraordinary writ procedures. The reported growth in the Nation's caseload and the limited number of annual trial terms, even accepted as true, do not establish that those reviewing courts are closed to Petitioners or unable to grant custody-related relief.

*Chegup* confirms the importance of exhaustion here. The Tenth Circuit explained that, when ICRA would place a federal court in direct supervisory oversight of tribal action, comity and sovereignty require the tribal courts to act first. 28 F.4th at 1070. The broader the requested federal supervision, the stronger the reason to require tribal exhaustion before it begins.

Petitioners may ultimately disagree with the answers the Choctaw Nation's courts provide. But exhaustion does not guarantee a particular answer. It determines who must answer first.

Petitioners have not exhausted the appellate and extraordinary writ remedies available within the Choctaw Nation's courts, and the allegations in the First Amended Petition do not establish an exception to that requirement. Any otherwise cognizable claim under § 1303 therefore cannot proceed against the Nation in this action and must be dismissed without prejudice.

## B.    Most of the Relief Petitioners Seek Is Not Available Under § 1303

Exhaustion disposes of any otherwise cognizable habeas claim. The Court therefore does not decide the outer boundaries of "detention" or the full scope of relief available under § 1303. But Petitioners also request forms of relief that plainly do not lie in habeas. Unlike the difficult detention question in *Chegup*, those requested forms of relief do not implicate the unsettled boundaries of § 1303. See 28 F.4th at 1059–62.

Congress authorized a narrow federal remedy through 25 U.S.C. § 1303. The statute provides that "[t]he privilege of the writ of habeas corpus shall be available to any person, in a court of the United States, to test the legality of his detention by order of an Indian tribe."

The boundary Congress drew matters.

Section 1303 authorizes a federal court to test the legality of a person's detention. It does not authorize a federal court to administer a tribal government, restructure a tribal agency, direct tribal spending, remove tribal employees, or supervise the future operation of a tribal justice system.

The Supreme Court made that limitation clear in *Santa Clara Pueblo v. Martinez*, 436 U.S. 49 (1978). Congress did not create a general federal cause of action to enforce the Indian Civil Rights Act. *Id.* at 72. Instead, Congress provided one express federal remedy: habeas corpus under § 1303. *Id.* at 58. The omission of

15

broader federal remedies was deliberate, reflecting Congress's considered judgment that federal enforcement must be balanced against tribal sovereignty and self-government. *Id.* at 61–62.

Petitioners invoke that narrow remedy, but they principally request something else.

They ask this Court to bar the Choctaw Nation Public Defender's Office from representing current tribal defendants, require the Nation to hire independent counsel, remove identified supervisors, restructure the public defender's office, impose staffing and caseload requirements, direct funding and compensation decisions, mandate office space and support personnel, require institutional remediation plans, regulate the future operation of county jails, certify a class, award damages exceeding $75,000, award attorney fees, and retain continuing oversight.

Those are not remedies directed toward testing the legality of an individual Petitioner's detention. They are demands for institutional reform, principally of tribal institutions, but also of county jail operations.

Habeas corpus asks a specific question: Is this person lawfully detained? It does not place the institutions of a separate sovereign under continuing federal management.

The Choctaw Nation is not a department of the federal judiciary. Its public defender's office is not an agency of this Court. Its personnel, budgets, and internal

16

policies do not become subjects of federal administration merely because Petitioners place the words "habeas corpus" above their pleading.

Courts look to substance, not labels. Although Petitioners ask the Court to issue an order to show cause why the writ should not be granted, the First Amended Petition does not identify, Petitioner by Petitioner, the detention order being challenged, the facts making that detention unlawful, or the custody altering relief the Court should enter. Instead, the pleading advances broad institutional allegations and requests remedies directed primarily toward the future administration of the Nation's criminal justice system.

The Court does not minimize those allegations. But the seriousness of an allegation cannot enlarge the remedy Congress provided.

Section 1303 permits federal review of unlawful tribal detention. It does not permit federal governance of tribal institutions.

Petitioners therefore cannot obtain damages, attorney fees, class-wide institutional restructuring, removal of tribal personnel, budgetary directives, or continuing federal supervision through § 1303. Any claim for such relief under § 1303 fails as a matter of law.

The Court does not hold that a properly framed § 1303 petition could never proceed on behalf of a class. Petitioners rely on *Jennings v. Rodriguez*, 583 U.S. 281, 285-91 (2018), but that case concerned detention under federal immigration statutes,

not detention under ICRA. Although Rodriguez originally filed a habeas petition, the Supreme Court did not decide that class treatment remained proper. *Id.* at 312-15. Instead, it directed the court of appeals on remand to reexamine whether the respondents could continue litigating their claims as a class. *Id.* Even assuming a class mechanism were procedurally available here, it could not expand § 1303's substantive remedy, convert requests for institutional governance into custody altering habeas relief, or cure the absence of individualized detention allegations.

## C.    The Claims Against the Choctaw Nation Cannot Proceed

Even apart from exhaustion, the Choctaw Nation is entitled to dismissal for two independent reasons. Sovereign immunity bars the non-habeas claims asserted directly against the Nation, and the Nation itself is not the proper respondent to Petitioners' habeas claim.

### 1.    Sovereign Immunity Bars Petitioners' Non-Habeas Claims Against the Nation

Indian tribes possess sovereign immunity from suit unless Congress unequivocally abrogates that immunity or the tribe clearly waives it. *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 754 (1998); *Native Am. Distrib. v. Seneca-Cayuga Tobacco Co.*, 546 F.3d 1288, 1292–93 (10th Cir. 2008). Because sovereign immunity limits the Court's subject-matter jurisdiction, Petitioners bear the burden of establishing an applicable waiver or congressional abrogation.

They have established neither.

Congress did not abrogate tribal sovereign immunity through ICRA. In *Santa Clara Pueblo*, the Supreme Court held that "[n]othing on the face of Title I of the ICRA purports to subject tribes to the jurisdiction of the federal courts in civil actions for injunctive or declaratory relief." 436 U.S. at 59. Congress's decision to provide habeas corpus as the single express federal remedy cannot be converted into a general authorization to sue tribes for damages or equitable relief. *Id.* at 59, 70-72.

Petitioners nevertheless seek damages exceeding $75,000, attorney fees, declaratory relief, and structural injunctions directed against the Nation. They ask this Court to regulate the Nation's public defender system, remove tribal employees, direct staffing and funding decisions, and supervise future institutional reforms. ICRA does not abrogate the Nation's immunity from those claims.

Petitioners also identify no waiver applicable in this Court. They rely on the Choctaw Nation Claims and Immunities Act, arguing that the Act withdraws immunity for corruption or conduct outside the scope of tribal employment. But a waiver of tribal sovereign immunity must be clear and unequivocal. *Native Am. Distrib.*, 546 F.3d at 1293. The Act permits specified claims in the Choctaw Nation District Court while expressly preserving the Nation's immunity in other forums. 125 C.N.S. §§ 4(C), 19(A). A limited agreement to answer claims in the Nation's own courts is not consent to answer them here.

Sovereign immunity is not lost merely because a plaintiff characterizes the challenged conduct as corrupt, unlawful, or outside tribal policy. The question is not

how Petitioners describe the conduct. The question is whether the Nation clearly agreed to be sued for that conduct in this Court.

It did not.

Petitioners clarify that their § 1983 claim is directed only at Sheriff Park, not the Choctaw Nation. That claim is not at issue in the Nation's motion, and the Court expresses no opinion on it in this Order. To the extent the First Amended Petition asserts claims directly against the Nation under the United States Constitution, those constitutional provisions do not apply directly to Indian tribes. Parallel rights created by ICRA may be enforced in federal court only through the remedy Congress supplied in § 1303. *Santa Clara Pueblo*, 436 U.S. at 56–58, 65–72.

Petitioners' claims for damages, attorney fees, declaratory relief, and structural injunctive relief against the Choctaw Nation are therefore barred by sovereign immunity.

2.    **The Choctaw Nation Is Not the Proper Respondent to Petitioners' Habeas Claim**

Section 1303 preserves a federal remedy to test the legality of detention by order of an Indian tribe. But it does not make the sovereign tribe itself the respondent in every habeas proceeding.

*Santa Clara Pueblo* explains why. In holding that § 1303 did not constitute a general waiver of tribal sovereign immunity, the Supreme Court observed that

habeas corpus operates against the individual custodian rather than the sovereign tribe. 436 U.S. at 59. The remedy tests the custodian's authority to maintain the challenged restraint; it does not transform the sovereign whose law produced the detention into the habeas respondent.

Petitioners allege that they are physically confined in county jails. They contend that the Choctaw Nation nevertheless remains their legal custodian because the Nation initiated the prosecutions and its courts issued the orders underlying their detention. But the authority that caused a detention and the person presently responsible for maintaining it are not necessarily the same.

In challenges to present physical confinement, the proper respondent ordinarily is the immediate custodian—the official with present authority over the petitioner's confinement. _Rumsfeld v. Padilla_, 542 U.S. 426, 434–35, 439 (2004). Petitioners identify no authority holding that a sovereign tribe becomes the proper habeas respondent merely because a tribal court entered the order pursuant to which a county jail holds the petitioner.

Petitioners' contract facility analogy does not alter that conclusion. In a challenge to present physical confinement, the immediate-custodian rule turns on the official with present authority to produce the petitioner and implement release—not on the sovereign whose prosecution or order supplied the legal basis for confinement. _Padilla_, 542 U.S. at 435, 439.

_Dry v. CFR Ct. of Indian Offenses for the Choctaw Nation_ does not hold otherwise. 168 F.3d 1207 (10th Cir. 1999). _Dry_ addressed whether release on recognizance pending trial imposed a sufficient restraint on liberty to constitute "detention" under § 1303. _Id._ at 1208 & n.1. The Tenth Circuit held that it did. _Id._ at 1208. But _Dry_ did not decide whether the sovereign tribe itself is a proper respondent when a petitioner challenges present physical confinement maintained by another official.

This distinction is narrow but important. The Court does not hold that only a county jailer could ever be a proper respondent under § 1303. Nor does it decide whether a tribal official possessing present authority to withdraw, alter, or terminate a restraint could properly be named in a different petition. The question here is whether the Choctaw Nation itself is a proper habeas respondent.

It is not.

The Nation issued no waiver permitting it to be named directly, and § 1303 does not make the sovereign tribe the custodian against whom the writ runs. The habeas claim against the Choctaw Nation therefore cannot proceed.

Accordingly, all claims against the Choctaw Nation must be dismissed without prejudice.

22

**D.    The Proposed Amendment Would Be Futile**

Petitioners initially sought leave to file a Second Amended Petition adding Choctaw Nation Chief Gary Batton, Chief Judge Amy Pierce, and Corrections Manager Robert Apala as respondents. [Docket No. 31]. In their reply, Petitioners tendered a revised proposed petition that also names Choctaw Nation Public Defender Director Blayne Allsup and Assistant Director Tim Beebe as respondents. [Docket No. 46 at 5; Docket No. 46-1 at 1–2]. Petitioners contend that the proposed tribal officials are proper respondents because they possess authority related to Petitioners' detention or may be sued for prospective relief based on allegedly unlawful or ultra vires conduct. [Docket No. 46 at 3–6].

Leave to amend should be freely given when justice requires. Fed. R. Civ. P. 15(a)(2). But leave need not be granted when the proposed amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962). An amendment is futile when the proposed pleading would be subject to dismissal. *Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007).

The proposed amendment would remain subject to dismissal.

Most importantly, it does not cure Petitioners' failure to exhaust available tribal remedies. Adding tribal officials does not alter that requirement. Any otherwise cognizable claim under § 1303 must first be presented through the Nation's available appellate and extraordinary writ procedures unless Petitioners establish a recognized exception. The proposed amendment does neither. The proposed petition's additional

allegations do not change that conclusion. Petitioners allege that jail personnel and public defender supervisors interfered with counsel, threatened retaliation, and offered reduced bail or release if Petitioners withdrew this federal action. [Docket No. 31-1 ¶¶ 8, 15–16]. Those allegations are serious. But the proposed petition does not allege that any Petitioner sought review in the Nation's Court of Appeals or Constitutional Court, that either court refused or obstructed a filing, or that either court lacked authority to address an allegedly unlawful detention. Its assertion that the tribal system cannot provide an adequate remedy is a legal conclusion, not a factual allegation concerning the availability of appellate or extraordinary writ review. The additional allegations therefore do not establish an exception to exhaustion.

A new caption cannot cure a claim brought too soon.

The proposed pleading also retains the same fundamental mismatch between the remedy Congress authorized and the relief Petitioners request. It continues to seek institutional restructuring, removal of tribal personnel, staffing and funding directives, damages, attorney fees, and continuing federal oversight. Adding officials does not convert those demands into habeas relief.

Nor does the proposed amendment adequately connect any newly named respondent to an individualized detention. Batton, Pierce, and Apala appear only in the caption and paragraph 1. Beyond reciting their titles and alleging collectively that Petitioners are under the "direct control" of Respondents and their agents, the

proposed petition attributes no act to any one of them. It does not identify which official possesses authority over which Petitioner, which detention order that official may alter, or what custody-related relief that official may implement. Its causes of action likewise refer to the Nation, Sheriff Park, and "all defendants" collectively without pleading an individualized claim against Batton, Pierce, or Apala.

The revised proposed petition fares no better as to Allsup and Beebe. Unlike Batton, Pierce, and Apala, the revised pleading attributes specific conduct to Allsup and Beebe in their supervision of the Choctaw Nation Public Defender's Office. [Docket No. 46-1 ¶¶ 14–15]. But it does not allege facts showing that either official possesses legal authority to issue, withdraw, or modify a detention order or to release any Petitioner. Instead, Petitioners ask the Court to prohibit Allsup and Beebe from representing tribal defendants and to remove them from their supervisory positions. [Id. at 23, 26]. Those requests concern the personnel and structure of the Nation's public defender system, not the legality of any particular detention or custody altering habeas relief. Naming Allsup and Beebe also does not cure Petitioners' failure to exhaust tribal remedies. Thus, even if the Court considers the revised proposed petition tendered with Petitioners' reply, the proposed claims against Allsup and Beebe remain futile.

Titles do not establish custody. Authority does.

Petitioners rely on *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140 (10th Cir. 2011), which applied *Ex parte Young*, 209 U.S. 123, 159–60 (1908), to tribal sovereign

immunity. But *Crowe & Dunlevy* did not dispense with exhaustion merely because tribal officials were named; it excused exhaustion because the tribal court plainly lacked jurisdiction over a nonmember nonparty. 640 F.3d at 1154. Nor did the decision expand the remedy authorized by § 1303 or establish that every tribal official connected to an allegedly unlawful policy is a proper habeas respondent. The case holds that *Ex parte Young* applies when a plaintiff alleges an ongoing violation of federal law and seeks prospective relief against a tribal official. *Id.* at 1155–56. That principle does not answer whether Petitioners exhausted their tribal remedies or whether the proposed officials possess authority to provide habeas relief. *Ex parte Young* removes an immunity barrier to otherwise available prospective relief; it does not establish custody authority or expand § 1303's remedial scope.

Petitioners' reliance on *Dry* is similarly misplaced. *Dry* explains what restraints may constitute "detention" under § 1303. 168 F.3d at 1208 & n.1. Far from dispensing with exhaustion, *Dry* remanded for the district court to determine whether the petitioners had sufficiently exhausted their tribal remedies. *Id.* at 1209. Nor did *Dry* address, much less authorize, structural reform through habeas corpus.

The Court, therefore, need not decide whether any proposed official could qualify as a proper § 1303 respondent in a different case. Even assuming one could, the proposed petition would remain unexhausted. And even assuming prospective relief could be pursued against an appropriate tribal official, § 1303 would not authorize the institutional governance Petitioners request.

The proposed amendment adds parties and allegations. It does not cure the defects in the proposed claims against the Nation or the newly named tribal officials.

Petitioners' Motion for Leave to File an Amended Complaint and Add Defendants is therefore denied as futile. That ruling does not foreclose a properly framed habeas petition, filed after exhaustion, against a respondent possessing authority to provide custody-related relief. Nothing in this ruling addresses whether Petitioners may amend their claims against Sheriff Park. That issue is resolved by separate order.

## IV.    CONCLUSION

Petitioners allege serious failures within the Choctaw Nation's criminal justice system. The Court does not decide whether those allegations are true. It decides whether Petitioners' claims against the Choctaw Nation, and their proposed claims against additional tribal officials, may proceed in their present form.

They may not.

Most of the relief Petitioners seek lies beyond the habeas remedy Congress authorized in § 1303. Any otherwise cognizable habeas claim against the Nation remains unexhausted. Sovereign immunity bars the non-habeas claims asserted directly against the Nation, and the Nation itself is not the proper respondent to Petitioners' habeas claim. Adding tribal officials does not cure those defects.

27

This case began with a question: Who decides first? As to Petitioners' challenges to detention by order of the Choctaw Nation and their demands for federal supervision of the Nation's criminal justice institutions, the Nation's courts must be afforded the first opportunity to answer.

Congress authorized this Court to review tribal detention. It did not authorize this Court to govern a tribal nation.

**IT IS THEREFORE ORDERED** that Respondent Choctaw Nation of Oklahoma's Motion to Dismiss [Docket No. 32] is **GRANTED**. All claims against the Choctaw Nation of Oklahoma are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Petitioners' Opposed Motion for Leave to File Amended Complaint and Add Defendants [Docket No. 31] is **DENIED** insofar as Petitioners seek to add Gary Batton, Amy Pierce, Robert Apala, Blayne Allsup, or Tim Beebe as Respondents or reassert claims against the Choctaw Nation. Any amendment permitted against Sheriff Terry Park is governed exclusively by the Court's separate order addressing his motion to dismiss.

IT IS SO ORDERED this 30th day of July, 2026.

JASON A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE

28