# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF OKLAHOMA

FILED

AUG 18 2026

BONNIE HACKLER
Clerk, U.S. District Court
By ______ Deputy Clerk

| | |
|---|---|
| (1) TERRY BAYLES; (2) KERRY WELBORN; (3) AUSTIN CLAYLON; (4) CALEB BACON; (5) TONY BLAKE; (6) MISTY CAMPBELL; (7) BILLY CHASE; (8) JEREMIAH COLBERT; (9) GEORGE DAVENPORT; (10) CHRISTOPHER GRAY; (11) JAMES HENSON; (12) PEYTON JONES; (13) JAMES GEOFFREY; (14) SAWYER LOPEZ; (15) ADELBY MARTINEZ; and (16) JAMES MCKIBBEN, Petitioners, | |
| v. | 25-CV-370-JAR |
| (1) THE CHOCTAW NATION OF OKLAHOMA; and (2) CHOCTAW COUNTY SHERIFF, TERRY PARK, EX. REL. COUNTY JAIL, Respondents. | |

**OPINION & ORDER GRANTING**
**DEFENDANT SHERIFF PARK'S MOTION TO DISMISS**

A county jail does not become a tribal institution merely because it houses tribal detainees; however, identifying state authority is only the beginning of a § 1983 claim. Petitioners must still identify who was injured, what happened, which constitutional right was violated, and what county policy or decision caused the violation.

The First Amended Petition does not do that.

Choctaw County Sheriff Terry Park moves to dismiss all claims asserted against him. Petitioners sue Park only in his official capacity, but their allegations do not identify a county policy, established custom, or final policymaker decision that caused a constitutional injury. Nor do they identify which Petitioner asserts which claim, which jail employee committed which act, or what injury followed.

Instead, the First Amended Petition gathers fourteen Petitioners, several constitutional amendments, habeas corpus, ICRA, § 1983, *Bivens*, civil conspiracy, medical care, legal mail, retaliation, physical abuse, and solitary confinement into collective allegations against "the Jail." Some allegations describe concrete categories of conduct. None states a complete official capacity claim.

Sheriff Park nevertheless reaches too far in arguing that the alleged conduct occurred only under color of tribal law. The jail's alleged compliance with a tribal request does not necessarily change the source of the authority used to control a county facility, regulate attorney access, or administer its mail. A directive may explain why an official acted. It does not necessarily change the authority under which the official acted.

But state action is not municipal liability. A county may be held liable under § 1983 only for its own decisions: not merely because it employed the person who allegedly violated the Constitution. Petitioners must connect each alleged deprivation to an official policy, an established custom, or a qualifying decision by a final policymaker. They have not.

A contract does not erase state authority. State authority does not erase the rules of pleading.

## I. BACKGROUND

Petitioners are fourteen defendants in criminal proceedings pending within the Choctaw Nation's court system: Terry Bayles, Kerry Welborn, Austin Claylon, Tony Blake, Misty Campbell, Billy Chase, Jeremiah Colbert, George Davenport, Christopher Gray, James Henson, Peyton Jones, James Geoffrey, Adelby Martinez, and James McKibben. They allege that, when the First Amended Petition was filed, they were detained by order of the Choctaw Nation and housed in the Choctaw County Jail. [Docket No. 15 ¶¶ 1, 3]. Two original Petitioners, Caleb Bacon and Sawyer Lopez, requested dismissal of their claims. [*Id.* ¶ 3]. The remaining fourteen Petitioners continue to seek relief against Sheriff Park. [*Id.*].

The First Amended Petition is styled as a petition for habeas corpus under the Indian Civil Rights Act ("ICRA"), 25 U.S.C. §§ 1301–1304. It names the Choctaw Nation and Choctaw County Sheriff Terry Park as Respondents. Petitioners expressly sue Sheriff Park only in his official capacity. [Docket No. 15 ¶ 34].

Most of the First Amended Petition concerns the structure and operation of the Choctaw Nation Public Defender's Office. But Petitioners also allege misconduct within the Choctaw County Jail.

On September 16 and 17, 2025, Petitioners' counsel visited the jail and met with an unidentified inmate who allegedly sought private representation after the

Choctaw Nation Public Defender's Office ceased representing that person. [*Id.* ¶ 17(a)]. Counsel allege that jail employees informed them that other inmates also wished to discuss this litigation and possible private representation in their tribal criminal proceedings. [*Id.*].

Petitioners allege that, on September 18, 2025, jail employees abruptly denied counsel further access to other inmates and existing clients. [*Id.* ¶ 17(b)]. They allege, on information and belief, that the jail either acted independently or followed instructions from the Choctaw Nation when it restricted that access. [*Id.* ¶ 18].

Petitioners further allege that jail employees opened and withheld multiple items marked "Attorney-Client Communications" or "Confidential," read or disclosed their contents to Choctaw Nation Public Defender supervisor Timothy Beebe, delayed delivery of letters until after an October 15, 2025 tribal hearing, and permanently withheld at least two other letters sent by Petitioners' counsel. [*Id.* ¶ 19].

Elsewhere, the First Amended Petition alleges more generally that jail employees or tribal officials coerced and intimidated Petitioners, photographed protected correspondence, denied access to private counsel, denied medical care, and threatened retaliation if Petitioners continued participating in this litigation. [*Id.* ¶¶ 1, 8]. It also refers to "constant harassment and coercion" by jail staff and the public defender's office and reports (described in the pleading as "unconfirmed") that one unidentified Petitioner was physically beaten and another was placed in solitary confinement for supporting this action. [*Id.* ¶ 15(b)].

The First Amended Petition does not organize those allegations into a single legal theory against Sheriff Park. Instead, it invokes several.

The second cause of action, directed at the Choctaw County Jail "ex rel. Terry Park," incorporates the first thirty paragraphs of the pleading and alleges that Petitioners' continued detention violates the United States Constitution, the Choctaw Nation Constitution, and tribal law. [*Id.* ¶¶ 31–33]. It further alleges that the jail denied access to counsel and legal mail, interfered with attorney-client relationships, disclosed privileged communications, denied medical care, prolonged incarceration, and impaired access to the courts. [*Id.* ¶ 33].

Paragraph 34 asserts a claim under 42 U.S.C. § 1983, labels that claim a "Bivens Claim," and invokes the First, Sixth, and Fourteenth Amendments. Petitioners allege that jail employees, acting under color of state law, opened and disclosed legal mail, denied access to counsel, and facilitated retaliation at the direction of or in concert with the Choctaw Nation. [*Id.* ¶ 34].

The third cause of action is asserted against all Respondents. It alleges a conspiracy under § 1983 or ICRA between Choctaw Nation officials, public defender personnel, and county jail employees to deny access to counsel, open privileged mail, and retaliate against Petitioners. [*Id.* ¶¶ 35–36]. It also asserts conditions-of-confinement claims under the Eighth and Fourteenth Amendments and ICRA based on alleged harassment, physical beatings, and punitive solitary confinement. [*Id.* ¶ 37].

Petitioners seek both damages and prospective relief from Sheriff Park. They request more than $75,000 in actual damages, costs, and attorney fees. They also ask the Court to prohibit the jail from interfering with attorney access, legal mail, protected expression, and medical care and to require the jail to submit a remediation plan for continuing federal oversight. [*Id.* at 23–25].

Sheriff Park moved to dismiss all claims asserted against him. [Docket No. 38]. He argues that Petitioners failed to exhaust tribal remedies; that he is not a proper respondent under § 1303; that § 1983 claims cannot be asserted in a pleading seeking habeas relief under § 1303; that jail personnel acted under color of tribal rather than state law; and that Petitioners failed to plead an official capacity claim under ***Monell***. Park expressly relies on the state action and municipal liability issues as independently dispositive and does not separately brief whether the alleged conduct states a violation of each constitutional provision Petitioners invoke. [*Id.* at 8 n.1].

Petitioners oppose dismissal. [Docket No. 45]. They contend that their § 1983 claims arise independently of § 1303, that tribal exhaustion does not govern claims against a county official, that the jail's operation under a tribal housing arrangement does not alter Park's status as a state actor, and that the First Amended Petition sufficiently alleges policies or practices supporting official capacity liability.

Sheriff Park replied that the First Amended Petition remains an unexhausted habeas action, that no authority permits Petitioners to include § 1983 claims against a nontribal official in a § 1303 petition, that the alleged conduct was undertaken

pursuant to tribal authority, and that Petitioners' response cannot supply the policy or custom allegations missing from their pleading. [Docket No. 52].

The motion is fully briefed, and the Court heard oral argument.

## II. LEGAL STANDARD

A motion under Federal Rule of Civil Procedure 12(b)(6) tests whether the pleading states a claim upon which relief may be granted. To survive dismissal, a pleading must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The Court accepts well-pled factual allegations as true and draws reasonable inferences in Petitioners' favor. But that rule does not require the Court to accept legal conclusions, unsupported assertions, or a formulaic recitation of a claim's elements. *Iqbal*, 556 U.S. at 678. A pleading must provide more than labels and conclusions; its factual allegations must plausibly connect the defendant to the relief sought. *Twombly*, 550 U.S. at 555.

That requirement applies to each claimant and each claim. Where multiple plaintiffs assert multiple constitutional violations, the pleading must identify facts showing who suffered the alleged injury, what conduct caused it, and how the named defendant may be held responsible. Collective references to "Petitioners," "jail staff,"

or "the Jail" do not substitute for the factual allegations necessary to state an individual claim.

Petitioners expressly sue Sheriff Park only in his official capacity. The Court, therefore, evaluates the First Amended Petition as asserting claims against the governmental entity he represents, not as seeking to impose personal liability on Park for his own conduct.

Leave to amend should be freely given when justice requires. Fed. R. Civ. P. 15(a)(2). But leave may be denied when amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962). An amendment is futile when the amended pleading would remain subject to dismissal. *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Inv.'s Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999).

## III. ANALYSIS

### A. The First Amended Petition Asserts Distinct Habeas and Civil Rights Claims

Sheriff Park first argues that Petitioners cannot assert § 1983 claims in a pleading styled as a petition for habeas corpus under § 1303. According to Park, the two statutes are mutually exclusive, and the inclusion of the § 1983 claims within the First Amended Petition requires their dismissal.

The argument confuses the source of a claim with the title of the document containing it.

Section 1303 provides a federal habeas remedy to test the legality of detention by order of an Indian tribe. 25 U.S.C. § 1303. ICRA does not impliedly authorize a general civil action for declaratory or injunctive relief against a tribe or its officers. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 72 (1978); *Walton v. Tesuque Pueblo*, 443 F.3d 1274, 1278–80 (10th Cir. 2006).

But Petitioners do not rely solely on § 1303 for their claims against Park. They expressly invoke 42 U.S.C. § 1983 and the United States Constitution in the First Amended Petition. Their response identifies 28 U.S.C. § 1331 as the jurisdictional basis for those claims. [Docket No. 15 ¶¶ 2, 34–37; Docket No. 45 at 5–7]. Neither *Santa Clara Pueblo* nor *Walton* holds that an independently arising § 1983 claim against a county official disappears merely because it appears in a pleading that also seeks relief under § 1303. Those decisions define the remedy Congress provided under ICRA. They do not define the full reach of § 1983.

Habeas corpus and § 1983 address different injuries. Habeas generally concerns the fact or duration of confinement; § 1983 may provide a remedy for unconstitutional conditions that do not necessarily call the validity of the confinement into question. *McIntosh v. United States Parole Comm'n*, 115 F.3d 809, 812 (10th Cir. 1997).

The First Amended Petition attempts to assert both kinds of claims. Petitioners challenge the legality and duration of detention imposed through the Choctaw Nation's criminal proceedings. Those allegations sound in habeas. But they

also allege that county jail employees opened and withheld legal mail, denied attorney access, retaliated against inmates for participating in federal litigation, denied medical care, and imposed unconstitutional conditions during confinement. Success on those allegations would not necessarily invalidate the underlying tribal detention orders. Those allegations therefore arise, if at all, under § 1983.

That distinction does not mean Petitioners have adequately pled a § 1983 claim. It means only that Park has not established that those claims must be dismissed merely because Petitioners included them in a pleading that also invokes § 1303. The Court must evaluate each claim under the law governing that claim.

A caption identifies a document. It does not decide the source or substance of every claim within it.

### B. Petitioners Have Not Stated a Cognizable § 1303 Claim Against Sheriff Park

Section 1303 makes habeas corpus available "to test the legality of [a person's] detention by order of an Indian tribe." 25 U.S.C. § 1303. It does not convert every wrong allegedly committed during tribal detention into a habeas claim.

The First Amended Petition does not clearly identify the detention being challenged as to any individual Petitioner. It does not identify the tribal order authorizing that detention, explain why that order is unlawful, or request release or other custody altering relief for a particular Petitioner. It instead alleges collectively

that Petitioners' "continued detention" violates federal and tribal law. [Docket No. 15 ¶¶ 31–33].[1]

The allegations directed specifically at Sheriff Park concern what allegedly occurred inside the Choctaw County Jail: denial of attorney access, interference with legal mail, retaliation, inadequate medical care, physical abuse, and solitary confinement. Those allegations challenge the conditions under which Petitioners were held, not the tribal orders authorizing their detention. Habeas generally addresses the fact or duration of confinement; constitutional challenges to the conditions of confinement arise, if at all, through § 1983. *McIntosh*, 115 F.3d 809, 812 (10th Cir. 1997).

Petitioners allege that some of the challenged conduct prolonged their incarceration. But they do not identify which Petitioner remained confined longer, which act by a county employee caused the additional confinement, what proceeding or release was delayed, or how correction of the alleged jail practice would necessarily alter the validity or duration of a tribal detention order. A conditions claim does not become habeas merely because the pleading uses the word "detention."

[1] The same result follows under the Rules Governing Section 2254 Cases. Those Rules may be applied to a habeas petition not covered by Rule 1(a). R. Governing § 2254 Cases 1(b). Rule 2(c) requires the petition to specify each ground for relief, state the facts supporting each ground, and identify the relief requested. *Id.* R. 2(c)(1)–(3). That standard is "more demanding" than ordinary civil pleading. *Mayle v. Felix*, 545 U.S. 644, 655 (2005). The First Amended Petition does not satisfy it as to any individual Petitioner's § 1303 claim against Park. Dismissal of those claims without prejudice is therefore independently warranted under Rule 4.

To the extent Petitioners challenge the legality or duration of the tribal detention orders themselves, those claims remain unexhausted. Section 1303 petitions are subject to tribal exhaustion even though the statute does not expressly impose that requirement. *Valenzuela v. Silversmith*, 699 F.3d 1199, 1206–07 (10th Cir. 2012). Petitioners do not allege that they pursued available tribal appellate, post-conviction, or extraordinary writ remedies before filing this action. For the reasons explained in the Court's companion Order addressing the Choctaw Nation's motion to dismiss, their allegations do not establish an exception to exhaustion.

Sheriff Park also argues that he cannot be a proper respondent under § 1303 because he is not a tribal official and lacks authority to end the restraint imposed by the Nation. The Court need not decide whether a nontribal physical custodian could serve as the respondent in some properly framed § 1303 petition. That question does not change what Petitioners pled here.

Their allegations concerning jail conditions do not sound in habeas. Their allegations challenging the tribal detention itself are unexhausted.

The § 1303 claims against Sheriff Park are therefore dismissed without prejudice.

**C. Tribal Exhaustion Does Not Bar Petitioners' Independent § 1983 Claims**

Sheriff Park argues that the entire First Amended Petition must be dismissed because Petitioners did not exhaust available remedies in the Choctaw Nation's

courts before filing this action. That argument is correct as to Petitioners' challenge to the legality of detention by order of the Nation. It does not follow that tribal exhaustion also bars independently arising § 1983 claims concerning conduct within a county jail.

Tribal exhaustion is a prudential rule grounded in comity and respect for tribal self-government. *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 15–17 (1987). It ordinarily affords tribal courts the first opportunity to address challenges to tribal authority and to rectify their own errors before a federal court intervenes. *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 856–57 (1985). The Tenth Circuit applies that rule to § 1303 petitions. *Valenzuela*, 699 F.3d at 1206–07.

The § 1983 claims against Sheriff Park present a different question. They do not ask this Court to invalidate a tribal detention order, reverse a tribal court ruling, or supervise the conduct of a tribal proceeding. They allege that employees of a county jail opened legal mail, restricted attorney access, denied medical care, retaliated against inmates, and imposed unconstitutional conditions during confinement.

The alleged involvement of Choctaw Nation officials does not change the object of those claims. Petitioners allege that the Nation directed or participated in some of the challenged conduct. But the § 1983 claims against Park ask whether county jail conduct violated federal rights and whether the county may be held responsible for that conduct. Resolving those questions would neither determine the validity of a tribal prosecution nor disturb a tribal detention order.

Comity requires respect for the sovereign authority being challenged. It does not transform every dispute involving a tribe into a claim that must first be presented to a tribal court.

Park identifies no authority cited in the briefing holding that the tribal exhaustion requirement applicable to a § 1303 petition also bars an independent § 1983 claim against a county official for conditions imposed within a county jail. *Valenzuela* does not so hold. It applies tribal exhaustion to a § 1303 petition challenging a tribal conviction and sentence. *Valenzuela* 699 F.3d at 1206–08. Petitioners' jail condition claims neither depend upon § 1303 nor seek the relief § 1303 provides.

The Court, therefore, concludes that Petitioners' failure to exhaust tribal remedies does not provide an independent basis for dismissing their § 1983 claims against Sheriff Park. This ruling concerns only tribal exhaustion. The Court does not decide whether some other exhaustion requirement applies to any properly pled conditions of confinement claim.

**D. Petitioners Plausibly Allege Action Under Color of State Law**

Section 1983 provides a remedy when a person acting under color of state law deprives another of a federally protected right. *Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1155 (10th Cir. 2016). An official acts under color of state law when exercising—or abusing—power actually possessed by virtue of state law. *West v. Atkins*, 487 U.S. 42, 49–50 (1988).

The state action inquiry is specific to the challenged conduct. A plaintiff must plausibly allege that the official (1) possessed actual authority, rooted in state law or longstanding custom, to engage in that conduct on the State's behalf and (2) purported to exercise that authority. *Lindke v. Freed*, 601 U.S. 187, 198–201 (2024). Apparent authority alone is insufficient. *Martinez v. City of Aurora*, 174 F.4th 745, 755–57 (10th Cir. 2026). Section 1983 does not reach conduct undertaken solely under color of tribal law. *Burrell v. Armijo*, 456 F.3d 1159, 1174 (10th Cir. 2006).

Sheriff Park argues that jail personnel acted under color of tribal law because Petitioners were charged in tribal court, detained by order of the Choctaw Nation, and housed in the county jail pursuant to an agreement with the Nation. He emphasizes Petitioners' allegation that the Nation may have directed jail employees to restrict attorney access and withhold legal mail.

That allegation does not decide the question.

The source of Petitioners' detention and the source of the authority used to administer the jail are not necessarily the same. The Choctaw Nation supplied the orders under which Petitioners were detained. But Petitioners do not challenge Park's authority to prosecute them, set their bail, or determine the duration of their tribal sentences. They challenge the authority allegedly used to control attorney visitation, administer legal mail, provide medical care, impose discipline, and regulate conditions inside the Choctaw County Jail.

The question is not who ordered the detention. It is whose authority allegedly governed the mailroom, the visitation room, medical care, and inmate discipline.

The First Amended Petition identifies Park as the Choctaw County Sheriff and alleges that employees of the Choctaw County Jail controlled attorney access and inmate correspondence. [Docket No. 15 ¶¶ 6, 17–19, 33–34]. It further alleges that the jail either acted independently or followed instructions from the Nation. [*Id.* ¶ 18]. Drawing reasonable inferences in Petitioners' favor, those allegations permit the conclusion that county employees possessed actual authority under state law over the jail and its prisoners and purported to exercise that authority when administering attorney access and inmate correspondence, even if a tribal request prompted the particular conduct. See Okla. Stat. tit. 19, § 513 (2026).

An instruction can explain why an official acted. It does not necessarily supply the legal authority used to act.

Park relies principally on *Barrick v. Bd. of Cnty. Comm'rs of McCurtain Cnty.*, No. 23-CV-129-JFH-GLJ, 2025 WL 2755863 (E.D. Okla. Sept. 29, 2025). There, cross-deputized state and county officers arrested a tribal member in Indian country. *Id.* at *1–2. On the summary judgment record, the court concluded that their authority to arrest him derived exclusively from tribal law and that they therefore did not act under color of state law. *Id.* at *4–5.

The allegations here concern different conduct and arrive at a different procedural stage. Park does not contend that a tribal commission created his office or

supplied every power necessary to operate the Choctaw County Jail. Nor does the First Amended Petition establish that the Nation possessed and delegated exclusive authority over the jail's mail, visitation, medical, or disciplinary functions. Unlike the arrest authority examined in _Barrick_, the pled facts do not compel the conclusion that, without tribal authorization, county personnel lacked all authority to perform the challenged acts.

_West_ reinforces the need to examine the function performed rather than the label attached to the contractual relationship. There, a physician under contract with the State acted under color of state law because, under the contract, he performed the medical care function the State was constitutionally obligated to provide. 487 U.S. at 55–56. _West_ does not resolve whether Park acted under state or tribal law, but it demonstrates that contractual status alone does not answer the state action inquiry.

The Tenth Circuit's decision in _Walden v. City of Duncan_ reinforces that conclusion. There, the court reversed summary judgment after the district court concluded that a cross-commissioned municipal officer was acting as a tribal officer rather than a state actor. _Walden v. City of Duncan_, --- F.4th ----, 2026 WL 2329610, at *3 (10th Cir. Aug. 12, 2026). _Walden_ explained that an official need not act in accordance with state law to act under color of state law and that the misuse of state conferred power may still constitute state action. _Id._ at *3; see also _id._ at *5. _Walden_ does not establish that Park acted under color of state law here. It confirms that tribal involvement does not end the inquiry.

At this stage, Park asks the Court to equate tribal direction with tribal authority. The First Amended Petition does not require that equation. Petitioners plausibly allege that county jail employees used authority associated with Park's county office when they controlled attorney access, handled legal mail, and regulated the conditions of confinement.

The Court, therefore, rejects Park's argument that the § 1983 claims must be dismissed because the alleged conduct occurred exclusively under color of tribal law. This conclusion decides only the source of the authority plausibly alleged. It does not establish that a constitutional violation occurred, that Park personally participated in any conduct, or that the county may be held liable under *Monell*.

**E. The First Amended Petition Does Not State an Official Capacity Claim**

Establishing action under color of state law does not establish liability against Sheriff Park.

Petitioners expressly sue Park only in his official capacity. [Docket No. 15 ¶ 34]. An official capacity claim against a county sheriff is treated as a claim against the governmental entity he represents. *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010). The county cannot be held liable merely because it employed the person who allegedly violated the Constitution. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

Instead, Petitioners must allege that an official policy or custom caused the constitutional injury. *Id.* at 694. The policy or custom must be the moving force behind the alleged violation. *Id.* A single decision may constitute municipal policy only when an official with final policymaking authority deliberately chooses among alternatives with respect to the challenged action. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (plurality opinion). When the identified policy or custom does not itself direct or authorize the alleged constitutional violation, Petitioners must also allege deliberate indifference to the risk that it would cause the constitutional injury. *Harden v. Hedgecock*, 181 F.4th 1094, 1101 (10th Cir. 2026); see also *George v. Beaver Cnty.*, 32 F.4th 1246, 1253 (10th Cir. 2022).

The First Amended Petition does not identify such a policy or custom.

It alleges that jail employees denied attorney access, opened and withheld legal mail, disclosed privileged correspondence, denied medical care, retaliated against inmates, and imposed unconstitutional conditions. But it does not identify:

- an express policy authorizing that conduct;
- an established custom or practice;
- a decision by Sheriff Park directing the conduct;
- Park's knowledge or ratification of the conduct;
- a failure to train or supervise;

- facts showing deliberate indifference; or
- a causal connection between a county policy and a constitutional injury suffered by a particular Petitioner.

Petitioners allege that jail employees either acted independently or followed instructions from the Choctaw Nation. [Docket No. 15 ¶ 18]. Neither alternative, standing alone, establishes municipal liability. If employees acted independently, the county is not liable merely because it employed them. If employees followed a tribal instruction, Petitioners must still allege that a county policy, custom, or final policymaker decision caused the county employees to carry out that instruction.

Petitioners emphasize that Oklahoma law assigns the sheriff final policymaking authority over the operation of the county jail. *Harden*, 181 F.4th at 1101. But the identity of a final policymaker does not answer whether that policymaker made the challenged decision. The First Amended Petition does not allege that Park ordered the denial of attorney access, directed the handling of legal mail, approved retaliation, knew of a serious medical need, or ratified any employee's conduct.

Park's status as the final policymaker for the county jail does not transform every act of a jail employee into county policy.

The allegations are also collective. The First Amended Petition does not identify which Petitioner received which item of mail, which Petitioner was denied access to which attorney, which Petitioner required medical care, or which Petitioner allegedly

suffered retaliation, physical abuse, or solitary confinement. The alleged actors are likewise described collectively as "jail staff," "the Jail," or "Defendants." Those allegations do not connect a particular constitutional injury to a particular county policy or decision.

Petitioners attempt to supply that connection in their response, asserting that the challenged practices were ongoing, known to Park, and tolerated by jail leadership. [Docket No. 45 at 9–10]. But the motion tests the allegations contained in the First Amended Petition. The pleading itself does not allege those facts.

State action identifies the source of the authority allegedly used. ***Monell*** asks whether the constitutional injury resulted from the county's own policy or custom. Petitioners have plausibly alleged the first. They have not pled the second.

The official capacity § 1983 claims against Sheriff Park are therefore dismissed without prejudice.

**F. Additional Labels Do Not State Claims Against Sheriff Park**

The First Amended Petition invokes ***Bivens***, ICRA, the Choctaw Nation Constitution, and tribal law. None supplies the official capacity claim Petitioners seek to pursue against Sheriff Park.

**1. *Bivens***

Paragraph 34 describes Petitioners' § 1983 theory as a "Bivens Claim Against Choctaw County Jail / Sheriff Terry Park." [Docket No. 15 ¶ 34].

It is not.

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics* recognized a damages remedy against federal narcotics agents alleged to have violated the Fourth Amendment. 403 U.S. 388, 389, 397 (1971). Petitioners allege that Park is a county sheriff who acted under color of state law. They do not allege that he is a federal officer or acted under federal authority.

To the extent Petitioners assert a claim under *Bivens*, that claim is dismissed with prejudice.

2. ICRA

Petitioners also invoke ICRA against Park. But ICRA governs an Indian tribe's exercise of the powers of self-government. 25 U.S.C. § 1302. Its only express federal remedy is the habeas remedy provided by § 1303. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 60–67 (1978); *Walton v. Tesuque Pueblo*, 443 F.3d 1274, 1278–80 (10th Cir. 2006).

Petitioners do not allege that Park is an Indian tribe or a tribal official exercising the Nation's powers of self-government. To the contrary, their § 1983 theory depends on the allegation that he is a county official acting under color of state law. ICRA does not create a separate civil claim against Park for the alleged operation of a county jail.

To the extent Petitioners seek damages, declaratory relief, or structural injunctive relief against Park directly under ICRA, those claims are dismissed with prejudice. The separate § 1303 habeas theory has already been addressed.

### 3. The Choctaw Nation Constitution and Tribal Law

The First Amended Petition alleges that Petitioners' continued detention violates the Choctaw Nation Constitution and the Choctaw Nation Tribal Code. [Docket No. 15 ¶¶ 21, 32]. But it does not identify the particular provision Park allegedly violated, the conduct constituting the violation, or a cause of action authorizing this Court to enforce tribal law against a county sheriff.

The Court will not construct that claim for Petitioners. If Petitioners contend that tribal law creates an enforceable claim against Park, they must identify the source of the right, the conduct violating it, and the legal authority permitting the claim to proceed in this Court.

The claims against Park under the Choctaw Nation Constitution and unidentified provisions of tribal law are dismissed without prejudice.

## G. Leave to Amend

Sheriff Park argues that amendment would be futile because the alleged conduct did not occur under color of state law and because § 1983 claims cannot be asserted in an action that also invoked § 1303. The Court has rejected both propositions. Amendment is therefore not necessarily futile.

The First Amended Petition nevertheless fails to state an official capacity claim against Park for the reasons explained above. Because Petitioners may be able to cure those deficiencies, the Court will afford them one opportunity to amend. *See* Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Petitioners may file a Second Amended Complaint within thirty days of this Order. Any amended pleading shall be limited to claims against Sheriff Park and must be consistent with the rulings contained in this Order.

The Court expresses no opinion on whether Petitioners can state any particular constitutional or statutory claim. If Petitioners do not timely amend, the Court will enter final judgment as to Sheriff Park based on the present pleading.

## IV. CONCLUSION

Sheriff Park is entitled to dismissal, but not on every ground he advances.

Petitioners' allegations concerning attorney access, legal mail, retaliation, medical care, and other conditions of confinement do not state a habeas claim under § 1303. To the extent Petitioners challenge the legality of the tribal detention orders themselves, those claims remain unexhausted. Neither *Bivens* nor ICRA creates the non habeas civil claim Petitioners assert against a county sheriff.

Park reaches too far, however, in arguing that the alleged county jail conduct necessarily occurred only under color of tribal law. The source of Petitioners' detention and the source of the authority used to administer the jail are not

necessarily the same. A tribal instruction may explain why a county employee acted. It does not necessarily change the authority under which that employee acted.

But state action is not municipal liability.

Petitioners sued Park only in his official capacity. They therefore must allege that a county policy, custom, or final policymaker decision caused a constitutional injury. The First Amended Petition does not make that connection. It alleges collective injuries by unidentified employees without identifying which Petitioner suffered which injury or what county action caused it.

A contract cannot assign away accountability. But accountability under § 1983 begins with a properly pled claim. This one is not.

**IT IS THEREFORE ORDERED** that Defendant Sheriff Terry Park's Motion to Dismiss [Docket No. 38] is **GRANTED**.

**IT IS FURTHER ORDERED** that Petitioners' claims against Sheriff Park under 25 U.S.C. § 1303 are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Petitioners' official capacity claims against Sheriff Park under 42 U.S.C. § 1983 are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Petitioners' *Bivens* claims and non habeas ICRA claims against Sheriff Park are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Petitioners' claims against Sheriff Park under the Choctaw Nation Constitution and unidentified provisions of tribal law are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Petitioners may file a Second Amended Complaint within thirty days of this Order. Any amended pleading shall be limited to claims against Sheriff Park and must be consistent with the rulings contained in this Order.

If Petitioners do not timely amend, the Court will enter judgment consistent with this Order without further notice.

**IT IS SO ORDERED** this 18th day of August, 2026.

JASON A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE